TALENT, The (FERRARA v.). See Case No. 4,745.

## Case No. 13,736.

In re TALIAFERO.

[3 Hughes, 422.] 1

Circuit Court, E. D. Virginia. Spring Term. 1874.

BANKRUPTCY—REVIEW BY CIRCUIT COURT—LIENS.

1. Any creditor holding a lien upon lands of the bankrupt may appeal from a decree affecting his rights to the supervisory jurisdiction of the circuit court.

2. Before lands of bankrupts covered with liens can be sold free of liens by the bankruptcy court, all liens and their priorities must be definitely ascertained, after personal notice to lien creditors; otherwise, the lien creditors not bound.

3. Where other courts have taken full jurisdiction of property on which liens are asserted, the bankruptcy courts should, in general, not interfere.

[In review of the action of the district court of the United States for the Eastern district of Virginia.]

Petition for review [in the matter of John F. Taliafero] under the second section of the bankrupt act [of 1867 (14 Stat. 518)].

John Hunter, for a lien creditor, appellant. L. L. Lewis, for assignee.

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

Before WAITE, Circuit Justice, and BOND, Circuit Judge.

WAITE, Circuit Justice. Previous to the year 1870 judgments to a large amount had been rendered against Taliafero, the bankrupt. which were liens on his lands. During that year the present petitioners, being part of the judgment creditors, filed a bill in the circuit court of Orange county, praying a sale of the lands to pay the judgments. Upon this bill such proceedings were had that, on the 3d day of October, 1872, that court rendered a decree confirming the report of. a master to whom a reference had been made to ascertain the liens and their priorities, and appointing certain commissioners to sell the lands on the premises, at public auction to the highest and best bidder, after notice of the time and place of sale, for at least 30 days by publication in such paper or papers as the commissioners should select, and by printed handbills posted on the front door of the courthouse, and in three other public places in the county. The commissioners were also authorized, at their discretion, to sell the property at private sale, and upon the following terms, to wit: Cash in hand sufficient to pay all costs and the expenses of the sale, and the residue in five equal annual installments, the purchaser giving bond with approved security for the deferred payments, and the title to be retained until the final payment was made. They were also authorized to sell the property as a whole, or in parcels, as they should think most judicious. The amount of the liens, as reported by the master, exceeded $12,000, with interest to be added from August 20, 1870. The proceeds of the sale when made were to be applied to the payment of the lien debts in the order of their priority.

Taliafero was adjudged a bankrupt on the 9th June, 1870, upon his own petition. An assignee was appointed on the 14th July. On the 16th September, the assignee filed his petition in the district court as follows: "To the Honorable, etc.: The petition of, etc., assignee, etc., respectfully represents that a certain portion of said bankrupt's estate, to wit, a tract of several hundred acres of land lying in said county of Orange, is surrendered by him as forming a part of his assets, and as such assigned by this court to your petitioner; that it is averred that certain liens affect such property, but as no evidence of this fact appears upon the proceedings, your petitioner believes it will be for the best interests of the whole creditors that said property be sold at public auction under an order of this court, and that the liens, if any exist, be under said order transferred from this property to the fund released. Wherefore your petitioner prays that an order of court may be made, authorizing a meeting of the creditors of said bankrupt to be held in terms

of rule xvii., of 'General Orders in Bankruptcy,' and for the purposes herein stated." Signed by the assignee and sworn to.

Upon the filing of the petition the district judge (Underwood) made the following order: "Alexandria, Va., September 17th, 1873. It is ordered that the petitioner be, and he hereby is, authorized to call a meeting of the creditors of John F. Taliafero, bankrupt, to be held in the office of the register in bankruptcy at Richmond, on the 25th day of October, 1873, at ten o'clock a. m., that cause be shown why the prayer of this petition should not be granted. And it is further ordered that he shall publish notice of said meeting in the State Journal, and that he shall also serve notice by mail on all known lien creditors." Signed by the district judge.

It nowhere appears, from the papers or proofs, that the notice required by this order was given, but we assume that the proper publication in the newspapers was made; and it is stated by the petitioners themselves in their petition for this review, that they and other judgment creditors appeared before the register on the day appointed for the meeting, and objected to a sale of the property by the assignee. In support of their objection they exhibited, as they claim, a copy of the decree of the circuit court of Orange, and of the report of the master on which it was predicated.

On the 19th February, 1874, the register made the following report: "Richmond, Va., Oct. 25th, 1873. I, etc., register in bankruptcy for the Eastern district, do hereby certify: On the 25th day of October, 1873, I held a meeting of the creditors of said John F. Taliafero, bankrupt, and cause was shown against the sale of the within mentioned property, but the register is of the opinion that no sufficient reason has been shown why the court should not order the sale." Signed by the register, February 19th, 1874.

Upon the filing of this report, and on the same day, the district judge made the following order: "Richmond, Va., February 19th, 1874. In respect that the order of this court of September 17th, 1873, has been complied with, and the meeting of parties interested in the estate of ———, bankrupt aforesaid, has been held, and no sufficient cause having been shown why the prayer of the petition of the assignee aforesaid should not be granted, it is ordered that the said, etc., assignee be, and he is hereby, authorized and empowered to sell the property of said bankrupt by public auction, as follows, to wit, in whole or in parcels, as may seem best. (1) That the day and place of sale shall be advertised twice a week for three weeks in the State Journal, published at Richmond, and by placards posted at three or more public places in the county in which such property is located. Sale to be made on some county court day at the courthouse of Orange county, Va. (2) That the terms of sale

shall be one-fourth cash, and the balance on credit of twelve and twenty-four months, with interest at the rate of six per cent. per annum, the purchaser to give notes with approved security for the deferred payments, and the title to be retained by the assignee until said notes are paid. (3) The assignee to report his proceedings to this court immediately on completion of the sale." Signed by the judge.

Important interests, such as are here involved, ought not to be dealt with in this summary manner. An assignee in bankruptcy is especially the representative of the unsecured or general creditors. He is in no respect the agent or representative of secured creditors, who do not prove their debts. He cannot deprive them of the benefit of their securities. His only interest is in what remains after the secured debts are paid. If the security is not more than sufficient to pay the debt, he ought not to interfere with it. Whenever he invokes the action of the bankrupt court in respect to such property, it should be by petition, setting forth the facts. He should describe the property and the incumbrances, so far as they can be ascertained by an examination of the public records, or in any other manner by the exercise of reasonable diligence. All parties whose names are known, or whose interests appear of record, should be summoned, or in some form notified to appear and answer the petition. Their rights may be affected by the order that is to be made. They should, therefore, be permitted to have their day in court, and to speak in their own behalf. The action of the court should be such as, having due regard to the rights of the secured creditors, will best protect the interests of the unsecured. A sale ought not to be ordered free of incumbrances, unless it is reasonably certain that the proceeds will be more than sufficient to discharge the liens. Especially should this be the case where the secured creditors oppose the order, and have themselves asked the interposition of a court of competent jurisdiction in their behalf, and obtained a decree for a sale upon terms which, in their judgment, will best promote their interests. The court should, therefore, be accurately informed as to the facts before it is called upon to make any order. This cannot operate to the injury of the assignee or those whom he represents. He can, if proceedings have already been commenced by the creditors, ask to be made a party in the place of the bankrupt, and thus be put in a condition to avail himself of all the powers of the court in which they are pending that may properly be exercised in his behalf. If unwilling to do this, he may at any time sell the property subject to the incumbrances, or he may himself commence proceedings in the bankrupt court to marshal the liens, and obtain a sale under the control of that court. All that is necessary for that purpose is that he make all lienholders

and incumbrancers parties to such proceedings, and have their rights settled in the court before which he calls them. If disputes arise as to the amount or validity of liens they can be settled and adjusted there, and, when settled, the court can act intelligently, with a view to the promotion of the interests of all parties. If the assignee does not wish to move himself, he may wait until the creditors proceed. To any such proceeding he will be a necessary party, and, being a party, can see that those whom he represents are properly cared for. The assignee ought not to invoke the action of the court until he has informed himself, as fully as he can, of the actual condition of the property. He is in one sense an officer of the court. He was appointed to manage the estate, and to dispose of it for the benefit of those who have submitted their interests in its distribution to the protection of the court. His duty is to advise the court of the facts, in order that it may act understandingly in the execution of its trust.

It is perfectly certain that, when the district judge made the order complained of in this case, he had no knowledge of the actual condition of the liens upon the property or of the rights of the parties to be affected by the sale. He had before him no means whatever of determining for himself whether or not it would be for the interest of the unsecured creditors that a sale should be ordered free of incumbrances, or whether such an order would affect injuriously the rights of others. He relied, as under ordinary circumstances, in the absence of opposition, it was proper he should, upon the information furnished by the assignee and the report of the register. The petition presented by the assignee for the allowance of the order contained only the most general statements. It did not even describe the lands, much less the incumbrances as they existed or appeared to exist. Not a single lienholder is named, and it is in terms stated that the proceedings in the bankrupt court, up to that time, furnished no evidence of the condition of the liens. The assignee asked, however, that a meeting of the creditors might be called to show cause, if any they had, why the court should not grant the prayer of the petition. Under the order of the court this meeting was held, but the creditors who alone could act (those who had proven their debts) made no attempt to ascertain the condition of the property. In fact, it may fairly be inferred that they were unwilling to do so. In the answer filed with us, it is said that certain of the secured creditors did appear and state verbally that such a decree as is now shown had been rendered, but that no sufficient evidence of that fact was filed. This statement, whether properly sustained by the proof or not, was sufficient to put those who were acting in the premises on inquiry. Information as to the

existence of the records and the place where they were to be found was then given. The meeting was held on the 25th October, but the report was not made until the 19th February following. In the meantime no new showing was made. The report, when made, was as general as the petition. It does not even state that any objection had been made to the sale, or that the attention of the register had been in any manner called to the proceedings in the state court.

It is claimed that no objection was made to the order on the hearing before the district judge. But this objection ought not to influence us in sustaining the order, since it was made immediately on the filing of the report, and without notice. It is also urged that a part of the lien debts have been paid, and that this can be made to appear if opportunity is given. So, too, it is said, that the interest which accrued upon the lien debts during the war was included in the judgments upon which the decree is predicated, and that it would be unjust and unfair to compel the unsecured creditors to go before the state courts to have these and other questions settled. All this would be very proper for the consideration of the assignee when determining whether he ought, in justice to those whom he represents, to proceed in the bankrupt court to have the rights of the several parties determined; but, so far from influencing the court to make an order of sale free of incumbrances without inquiry as to the facts, it ought to have caused it to refuse such an order until all such questions were settled.

Again, it is said that only $2,000 of the lien debts have been proven against the estate. A failure to prove the debt does not affect the lien. The debt is still in force against the property, although it may not be entitled to a dividend from the general fund. If it exists in fact, it must be considered by the court in all matters connected with the security which it holds.

It is further insisted that one of the petitioning creditors has not proven her debt against the estate, and, for that reason, she cannot call upon this court to act under its supervisory jurisdiction. The supervisory power of this court is not confined to the petitions of creditors who have proven their debts. The language of the second section of the act is, "Shall have general superintendence and jurisdiction of all cases and questions arising under this act." All persons, therefore, parties to or affected by any proceedings under the bankrupt jurisdiction of the district court, may invoke the supervisory powers of this court. Creditors who have proven their debts are, in effect, parties to all proceedings, and are always supposed to have an interest in all that is done. Whenever they appear, therefore, they are recognized in their character as creditors, and entitled to consideration as parties. If one who has not proven his debt appears, and asks relief, he must aver

and establish his special interest in the matter to be revised. That being done, he is entitled to a hearing. These petitioners have established such a special interest. The district judge ordered that all lienholders should be notified to appear and show cause why the prayer of the petition of the assignee should not be granted. The petitioners were lienholders. They were, therefore, proper persons to appear in the district court. They did appear, and become parties to the proceeding, although not named. Their interests are directly affected by the order which has been made, and they may ask to be relieved against it.

The order of the district court is reversed. If the assignee still considers that it will be for the interest of the general estate to have a sale of the property free of incumbrances, he can commence his proceeding again, making the necessary parties, and, upon a proper showing, obtain his order. All we decide now is that, upon the petition in its present form, and with the showing that has been made, the order of the 19th February ought not to have been passed, and we are satisfied that, if the district judge had known the facts disclosed in the petition and answer filed with us, at the time he made his order, we should not have been called upon to revise his action.

NOTE. Some months previously to this decision of the chief justice, and but a few weeks after Judge Hughes came upon the bench, he had established as rules of practice in bankruptcy the following regulations (see Rules of Practice in Bankruptcy [Fed. Cas. Append.] 2 Hughes 554, 555):

Petitions by assignees or creditors to sell real estate free from incumbrances, and to transfer the liens from the realty to the fund in court, shall be filed before the court, and an order to show cause may be issued notifying all creditors claiming liens on the said real estate to appear before the register on some day in such order named. A copy of such order shall be served on each of the creditors at least ten days before the day of appearance, unless notice by publication or mail be ordered by the court, instead of personal notice.

Sales of real estate free from all incumbrances will not be ordered unless all liens on the property shall have been previously ascertained, with their priorities, etc.

This decision was rendered before the passage of the Revised Statutes of the United States, on June 20, 1874, containing section 711, cl. 6 [18 Stat. 115], operating in connection with section 4972, cls. 3, 4.